Good morning. Welcome to everyone. First case on the call, the DACA today, Wednesday, November 14, 2012. Excuse me. As agenda number six, case number 113510, People v. Terry Lloyd. Counsel for the appellant, please proceed. Thank you, Mr. Chief Justice. May it please the court. Counsel. Good morning, Your Honors. My name is Ryan Wilson. I'm an attorney with the Office of State Appellate Defender, and I represent the defendant appellant, Terry Lloyd, in this cause. The state charged Mr. Lloyd with criminal sexual assault pursuant to subsection 12-13A2 of the Illinois Criminal Code. As a result, the state bore the burden of establishing that Mr. Lloyd committed an act of sexual penetration upon PV and at that time knew that she did not understand the nature of or give knowing consent to that conduct. To Mr. Lloyd's position, the state failed to meet its burden as to that knowing element, and as a result, his convictions must be reversed. The state disagrees. The state argues that it successfully met the knowledge element of the statute by establishing that Mr. Lloyd allegedly knew that PV was a minor at the time of the sexual penetrations. However, that position is inconsistent with the way the statute has always been interpreted by the courts. It is inconsistent with the statutory structure the legislature has put together for the criminalization of sex offenses, and for that reason, the state's position must be rejected. The cases that have examined the knowing element of the statute have really looked at one central issue, and that is whether there is a condition of which the victim suffers that causes the victim's ability to give effective consent to be throttled. Traditionally, those conditions have been things like the victim was intoxicated, the victim had a mental impairment, something of that nature. And even when the victim suffers from a condition such as those, the analysis isn't complete. The court continues to examine what effect that condition had on the victim's ability to understand the nature of the act and give knowing consent. For example, in cases like People v. Maloney or People v. Blake, the court examined a case where the victims were minors, the victims suffered from mental impairments or a mental handicap. The court didn't stop its analysis into the knowing element, though, when it noted that the victims were minors. It didn't stop its analysis when it noted that the victims merely suffered from some sort of impairment. Instead, it looked at what result or what effect that impairment would have had on the victim's ability to understand the nature of the act or give knowing consent. Could the jury look at the fact that the victim was 13 as a factor in assessing whether or not knowing consent could be given? I don't believe so. Not under the totality of the circumstances of a particular case? I don't believe so, because the operative question, regardless of age, is whether the victim is able to understand the nature of the act and give knowing consent. And as the dissent pointed out below and as Mr. Lloyd is arguing here, there may certainly be circumstances like the record before us, where the record seems to clearly demonstrate that PV understood exactly what was occurring in these encounters with Mr. Lloyd and gave knowing consent to that activity. Those might be other factors. But what about a case, given a hypothetical where the age is much younger? Still, the age itself cannot be considered a factor in determining whether or not knowing consent could be given? I don't believe so. And I've kind of got two responses to that question. First, the legislature has put this scheme together. An offense such as someone younger than PV in this case, let's say a 9-year-old, and an act of sexual penetration is performed upon her by someone who is 30. That's predatory criminal sexual assault. The legislature has set up a specific statute for that offense. Now, as to whether age can be considered, I don't believe it can, because that's not the operative question. The operative question is whether the victim is able to give knowing consent or able to understand the nature of the act, much like if there were a case where the state came in and said, well, of course the victim couldn't have consented. She had had four beers. Or she had had six beers. There may be some cases where that would be true. However, it's impossible for the jury to determine whether the elements of the statute are met unless they view the surrounding circumstances, the conduct of the victim in that case, what the defendant knew about the victim at that time. And the jury would have to determine, based on those factors, whether the state has successfully met the elements of the offense. In the cases where the court has examined the various factors, the various conditions the defendant suffers from, I think that those are very illustrative of why the state's argument in this case fails. Because the record, as it is set forth, demonstrates that the victim in this case seems to have known exactly what was going on. She had had sexual education classes at school. She had talked about sex with her mom. She had talked about sex with her sister and her friends. She testified that some of these things that occurred, she wanted to happen. She testified that there were instances where she would undress in Mr. Lloyd's presence without him asking her to do so. And on one occasion when he said, you've got too many clothes on, she got out of the van, walked into the house, removed some clothing, went back in the van, got in the van and I believe pulled her pants down and one of the encounters began again. These are the actions of someone who understands the nature of the acts that are being performed and certainly there was no indication. She gave, there's no fact that can be pointed to that where you can say Mr. Lloyd would have known, not that he may have known or that a reasonable person should have known, but that Mr. Lloyd knew that the victim was unable to understand the nature of the act or give knowing consent. And absent some factor that meets that statutory element, the state's, the Mr. Lloyd's convictions must be vacated. There's an alternative reason as well and that is the comprehensive statutory scheme that the legislature has put forward for the criminalization of sex offenses. The scheme reflects much deliberation on the part of the legislature and I say that because it seems like the legislature has criminalized almost every conceivable sex act that can be performed on adults and against some of the state's most vulnerable citizens, including children, the handicapped and the elderly. This statutory scheme not only sets forth what offenses should be criminalized, but also sets what the penalty should be for those offenses. And it spans a wide spectrum, such as a case where two 16-year-olds, a boyfriend and girlfriend, have a consensual, have consensual sexual intercourse. That, pursuant to the statutory scheme, is a Class A misdemeanor. It goes all the way towards something like predatory criminal sexual assault, a Class X, and then there's enhancements on top of that if a weapon is used or drugs are used, things of that nature. Under the state's interpretation though, any time that anyone would have sex with someone who was a minor in Illinois, they could be convicted of a Class I nonprobational felony and the sentences would be mandatorily consecutive if there were multiple acts. But doesn't the prosecutor have discretion in a lot of these offenses to decide whether they're going to charge a greater crime or a lesser crime? Sure. Depending upon what they believe the investigation shows? Sure. And in many contexts, I would agree that prosecutorial discretion could be used to okay what the state is trying to do in this case. I would not agree to that in this case, and there's a reason why. In constructing this statutory scheme, the legislature pretty clearly has said, we want this offense classified as a Class A misdemeanor. We want this offense classified as a Class I or Class II all the way up to Class X. If you take a case like two 16-year-olds having a consensual, performing an act of consensual intercourse, the legislature said that's a Class A misdemeanor. Under the state's theory, the prosecutor would, for all intents and purposes, be able to almost usurp the role of the legislature and say, no, you know what, I don't think this is a Class A misdemeanor like the legislature has said. This is a Class I felony. That's strictly not what the legislature has intended, and there are multiple examples of situations where the state could do that and pursue a greater offense than what the legislature intended. And in the case of two 16-year-olds, they could both be prosecuted as Class I felons pursuant to subsection 12-13A2 if the state's argument is accepted. So I don't think the prosecutorial discretion can be relied upon in a case like this. I would also note, and it's a much more minor point, but oftentimes in every case, in criminal cases that would be included, you know, you do have zealous prosecutors, and sometimes they can be overly zealous. And so you do have an issue of making sure that prosecutors don't look at necessarily a win and loss record as much as carrying forth what the legislature would like them to do. And in this case, I think that the legislature has pretty clearly set forth what this offense should be. And I should note, there is a statute for this offense. This isn't one of these offenses where there's no statute covering it, so the state has to get creative to criminalize it. The defendant could have been prosecuted pursuant to subsection 12-16D. That statute, aggravated criminal sexual abuse, would have prohibited sexual penetration between someone who is between the ages of 13 and 17 when the accused is more than five years older than the victim. Given the facts as they're set forth in the charging instrument, it seems like the state probably could have gotten a conviction had it prosecuted Mr. Lloyd under that subsection. For whatever reason, it chose not to do that. And instead, it chose to prosecute him not for the Class II that the legislature had intended, but it's asking for essentially the statute to be viewed in a way that it has never been viewed and for Mr. Lloyd instead to be convicted of a Class I nonprobational offense that requires mandatorily consecutive sentencing. If we accept that argument... Yes. Would we be going down the road and saying a 17-year-old youth who has no prior record charged with residential burglary, nonprobation? Okay. Convicted, comes up here and says, well, that's not what they set up. You know, the state overcharged, should have been burglary, should have been able to get probation. Are we going to be going down that road? I don't think so. You know, the legislature enacts schemes like this based on its determinations of policy and in order for there to be a comprehensive set of laws in the state. And in that context, in this context, in any context where there are, you know, extenuating circumstances that would warrant a sentence different than maybe what the statute prescribes, that's something that the legislature needs to look at. It's a situation, you know, much like the two 16-year-olds or an 18- and 16-year-old. The legislature has set forth what the proper sentence should be for that offense based on its policy determinations. And so I don't think that the court would be forced to go down that road. I think the court would be required to follow exactly what the statute says and sentence the individual, the 17-year-old who commits burglary, according to the statute in place at the time for that offense. Do you agree, counsel, that there's, as the appellate court found, that there's two ways, either unable to understand the nature of the act or unable to give knowing consent? The appellate court basically said it falls under unable to give knowing consent because 13-year-olds by their very age can't give knowing consent. I mean, go ahead. Well, I'm just saying what the appellate court said. Sure, I understand. Yeah. And, you know, where I would disagree with that, I think there's a difference between knowing consent, for instance, and something like effective consent or legal consent. The statute actually used to read effective consent, unable to understand the nature of the act or unable to give effective consent. And the legislature amended that statute. Now, even I would agree that I think the state's argument would be far more viable had the effective consent language still been in the statute. Arguably a situation of where the person cannot give legal consent might equate to a situation where they're unable to give effective consent. The legislature, though, amended the statute, not to require effective consent, but to require knowing consent. And I believe that there's a big difference there, and I believe that the statutory scheme the legislature has put in place highlights that. They made these determinations. A, you're right, somebody younger than 17 years old legally cannot consent to sex in Illinois. However, there are statutes for those. There's predatory criminal sexual assault for the youngest of people. There's a statute that Mr. Lloyd should have been charged with in this circumstance that would have prohibited his sexual penetration of a victim between the ages of 13 and 17. There is a scheme in place, and there's nothing wrong with that scheme. I'm just asking the court to stay with the status quo of how that scheme has historically been interpreted and used by the courts. So, yes, in answering your question, there are two ways. I didn't mean to interrupt and hijack your question. There are two ways, the absence of knowing, understanding the nature of the act, and the absence of knowing consent. And, again, I think if you look at the factual scenario in this case, there's no evidence that either of those were present. Mr. Lloyd had no way of knowing in this case. There was no indication that he should doubt that the victim was unable to understand the nature of the act or unable to give knowing consent. There simply wasn't. And while I think that the historical method of interpreting this subsection, as well as the statutory scheme overall, both show why the state's argument should be rejected, there are some other issues that were discussed in the briefing, such as Mr. Lloyd asking PV not to tell anyone what happened. The appellate court looked at that and said, well, that evidences his knowledge that she was unable to understand the nature of the act or unable to give knowing consent. That's not accurate. What that statement evidenced was the fact that he knew he was doing something he should not have been. Mr. Lloyd is not an attorney. He doesn't understand criminal statutes. He doesn't know what the standard is for someone understanding the nature of the act or much of what we're discussing here today. He does know right from wrong, and he knows what he did was wrong. There's absolutely no showing that his statement to PV that she shouldn't tell anyone was indicative of his knowledge that she did not understand the nature of the act or was unable to give knowing consent. The state can't use that statement to justify the charge brought in this case, whether it was correctly charged in the state's arguing for an extension of the statute or it was incorrectly charged and they're trying to construe the statute in a way that saves the conviction. The state also relies on the word unable and argues that the word unable means that the victim is not able to give legal consent. I don't believe that that can be the correct interpretation of the statute either. When the statute was initially passed, as I said previously, the statute read unable to understand the nature of the act, unable to give effective consent. That, to me, as I said, is much closer to covering the sort of situation, the sort of argument that the state's making in this case. Effective consent encompassing the victim's ability to give legal consent. The legislature changed that, however, and by changing that, I don't believe that they were trying to say, well, unable now means legally unable. Had the statute been left, and I even confuse myself with this sometimes, but had the statute been left the way that it had been, and unable means both legally unable and effective consent means unable, the statute would be redundant. It would be the victim was unable to understand the nature of the act and legally incapable of giving consent that she was legally incapable of giving, if both of those terms mean the same thing. They didn't. The legislature didn't mean for the statute to be construed this way. It did not mean the word unable to mean legally unable because PV was a minor at the time. Mr. Wilson, could you clarify for me whether we're looking at a, you indicated in your opening brief that the appellate court found that the minor was not able to give consent as a matter of law, yet the appellate court seems to couch it in terms of sufficient evidence for a reasonable person. Sure. Where are we on this? Is this a question of fact, or is it a question of law? I think it's a little bit of both in this case, merely because the question of whether the evidence was sufficient to meet the elements of the offense would be a question of fact. However, if the interpretation of the statute, whether the statute includes someone who is a minor or legally, as the state believes, legally unable to consent, that would be a legal question as far as the statutory interpretation goes. So ultimately it does present somewhat of a mixed question of both fact and law. Does it seem then that the state could charge this, but it's a matter of proof, whether or not she was able to give knowing consent? I guess my response to that would be the state can charge what it wants, and I think the interesting thing in this case is the state decided not to charge the offense that it should have, either with or as the sole charge. It didn't even charge in the alternative 12-16D, which would have been the appropriate charge in this case. So, you know, the state's free to charge whatever it wants. Our argument today is that the state failed to meet the knowledge element of the offense and in no way demonstrated that PV was unable to understand the nature of the act or give knowing consent. And, in fact, as I said, I think the evidence shows otherwise. Her actions – Is it part of your argument then that because there is another charge that's available that the legislature didn't contemplate that this section would be used in the manner that it was here? Yes. Yes. And, again, that goes back to the whole statutory structure type of argument, where the legislature lays out specific offenses with specific age requirements. You know, age is not mentioned in this statute at all. It's mentioned in many forms throughout the statute criminalizing sex offenses. Had the legislature intended for something like this to – or the state's theory to apply to subsection 12-13A2, it clearly could have said unable to understand the nature of the act or give knowing or legal consent or something along those lines. But it left that completely out of the whole equation. And I believe that's right, that because the legislature had this specific offense, it specifically intended not for 12-13A2 to be used in the manner the state's trying to use it in this case. So for those reasons, I'd ask for Mr. Boyd's convictions to be vacated. Thank you. Thank you, Mr. Wilson. Counsel for the appellee. Good morning, Your Honors. Counsel, may it please the Court, I am Assistant Attorney General Gopi Kashyap on behalf of the people of the State of Illinois. I'd like to start with the people's position being that age is certainly one factor that a jury could consider, and the jury legitimately did consider in this case in determining whether defendant knew that PV was unable to understand the nature of the acts or give knowing consent. There is no limiting language in the plain language of Section 15-, excuse me, in Section A2 of the statute. There is no limiting language. It says unable to understand the nature of the acts or unable to give knowing consent. Defendant asked this Court to insert language or limit it and not give the word unable its plain meaning. Age was at least one relevant factor for the jury to consider, and in this case there were a number of circumstances that showed that PV was unable to understand the nature of the acts or give knowing consent. Even under the plain language of the statute, I'm sorry, the plain language of the statute actually states that minor victims, because they are minors and automatically unable to give knowing consent, they fall within the statute automatically. Minor victims characteristically lack the capacity to exercise mature judgment. They possess an incomplete ability to understand the sexual activity, and this Court has recognized that for over 100 years. Back in Addison v. People in 1901, this Court recognized that a 14-year-old girl is like a mentally incapacitated individual or like someone who is unconscious, is unable to give knowing consent, and the law extends that to the minor victims. Of course, that case was long before the rewrite of all of our criminal code in terms of sexual crimes. So could I ask you some questions about the structure of the specific statute that we're talking about here? Yes. 5-12-13. Criminal sexual assault, the statute sets out four scenarios that would fall under this. One is where there's an act of sexual penetration by force, is the one section that we're discussing here, where the accused knew that the victim was unable to understand the nature of the act or unable to give knowing consent. The third deals with an act of sexual penetration on a victim who was under 18 and the accused was a family member. And then the fourth and final one is the allegations that there was an act of sexual penetration with a victim who was at least 13 but under 18, and the act was committed by someone who was in a position of trust or authority. If your reading of that section two includes minors generally, why would the legislature include two and three? They're very specific crimes based on the minor and the relationship to the accuser. It would seem as though those are within the same context of the same statute, 12-13, the legislature was very careful to carve out specific crimes involving minors but only in relationship to a family member or a person in a position of trust. There's a few distinctions between sections A3 and A4 and A2. Sections A3 and A4 are essentially, I mean, although there's a mens rea requirement with respect to sexual penetration, otherwise there's no mens rea requirement as to the age of the victim. The defendant, whether he knows, does not know the age of the victim, could be prosecuted under those sections. So under section A2 there's a knowledge requirement. They've elevated, there's some factor that elevates the crime up to a class one felony, and under A2 it's a knowledge requirement. Also in sections A3 and A4 the age of the victim is different. Minors under 17 in Illinois are incapable of consenting. However, sections A3 and A4 apply to minors under 18. So there's a class of victims that could be charged under A3 and A4. But in four it's 13 to 18. So A4 specifically would encompass our case in the fact that she's 13. So all I'm suggesting is that there does seem to be in the statute some specifics about age. In the very same statute that we're talking about, the legislation was dealing with specifically issues about age, that why would they need to put that in? Why would they need to include that if two includes the same kind of conduct? Because there may be circumstances like this one where proving position of trust, authority or supervision may be a little bit more difficult. This was a defendant whose mother did not like him, did not really trust him. However, she trusted him and he was around the house all the time. And whether they could have proved that he was in a position of trust, authority or supervision is not entirely clear. And those circumstances. And let me go back. My question is statutory interpretation intended to the legislature. What did the legislature mean by two when they also apparently felt it was appropriate to include three and four? What did they mean by two? If two already encompasses three and four, why would they have to include three and four? In the sense that we need to understand what they meant by two. Well, section two, as I said, it elevates the crime. I mean, there's a knowledge element. So what they're saying is that all minor victims are unable to give knowing consent and so they fall within the plain meaning of that statute. But sections A3 and A4 apply to a broader class of victims and there's no, the mens rea requirement elevates the offense. But even if this court finds that age alone would be insufficient under A2, age is a condition of fact. That the jury should consider. It's something that the victim comes in with. It's no different than a victim coming in with an IQ of, you know, a low IQ. It's no different than a victim coming in with having had four beers. And certainly the age of the victim and the intoxication defense that the defendant raised, it would be relevant. A 17-year-old who had consumed four beverages and was 120 pounds may be relevant to whether the victim was able to give knowing consent. Similarly, the age of the victim here, the 13-year-old, she came in as a 13-year-old and she acted like a 13-year-old. And defendant had known her her entire life. And so a jury, at the very least, age is a relevant factor under section A2. And especially in this case where the state was required to prove knowledge. And in this case, we have all of these facts. We have a minor, we have PV, who demonstrated her immaturity on the stand. And the question here is sufficiency. It's whether a reasonable trier of fact, a rational trier of fact, could have determined any rational trier of fact based on all of these facts. Based on the relationship between defendant and PV. Based on his actions and her actions, whether she was unable to give knowing consent. And the facts here show that. So for example, PV, defendant pointed to the example about her removing her clothes. But actually, her response to that was as a child, he said to go remove her clothes. So she went into the house and she removed her gym shorts, she left on her sweatpants, she left on her jersey, she left on her sweatshirt, she left on her underwear, she left on her sports bra. This girl didn't know what he meant. And she thought, well, he wanted to do the same thing as last time, so I guess I'll do that. And she didn't go change into lingerie, she didn't exhibit any sort of adult understanding of the sexual acts. Similarly, she used unsophisticated language when she was describing the acts. She talked about her vagina as her private part, her breasts as her chest, the top part of the vagina, her private, the bottom part, the part that has the hole. I mean, this is a girl who doesn't know what's going on. All of her responses were unsophisticated and minor. And defendants saw those responses. And she multiple times when he would ask her to do things, she would respond, I don't know, and then comply. And that happened over and over again. And so, again, given defendants' relationship, long-term, long-standing relationship with Peavey, the jury reasonably could have inferred, any rational trial fact could have inferred, that she was unable to give knowing consent or understand the nature of the acts. I'd like to go back to Justice Garmon's question of opposing counsel relating to prosecutorial discretion. And I just want to understand your argument, at least in part. You don't deny that Section 12-16D could have been used to charge this defendant, right? No, Your Honor. So from the State's perspective, is it as simple? There's many cases in which the acts involved that there are separate charges that could be used for any acts, right? Yes, Your Honor. So is your position that, as I understand the facts of this case, the defendant was 42 years old? Yes. All right, so are you asking this Court to rely upon prosecutorial discretion that perhaps if the defendant was 18 years old or 17 years old, it would have come under a different, well, actually 12-16D? Sure, Your Honor. I mean, that actually may have come under a different statute if the age difference was less than five years. But, however, yes, prosecutorial discretion is always in play in these cases. In sexual assault cases, a prosecutor must decide based on the facts and circumstances what charge to bring, and especially in sexual offense cases. So, for example, a 20-year-old employee who has sexually penetrates, I'm sorry, a 20-year-old manager or a 19-year-old manager who has sexual relations with his 16-year-old employee, I mean, the age difference is three or four years. It would have been a Class A misdemeanor, but some fact elevates that crime up to a Class 1 felony. Because now these age, while the age difference is three to four years, the position of trust authority or supervision is in place. And so, therefore, that factor elevates it. And similarly here, the knowledge element elevates it. And in these circumstances, where he's 42 and she's 13, that goes to her ability and it goes to his knowledge of her ability. He's an adult. He's a longstanding adult who's known these things. And so, yes, it comes down to prosecutorial discretion, and in every case there is prosecutorial discretion. Another example is the 16-year-old and the 10-year-old. There is a sexual penetration between a 16-year-old and a 10-year-old is not predatory criminal sexual assault, because predatory criminal sexual assault only applies to accused who are over 17. And so the 16-year-old and the 10-year-old would be a misdemeanor. However, perhaps we can agree that a 10-year-old is unable to give knowing consent. On this subject, how do you address, well, the defendant's argument as well as the dissent, where at least they point out that this discretion has not been appropriately exercised by prosecutors in Illinois? I assume you disagree. I disagree, Your Honor. He's pointed to no evidence that the state has consistently used this statute to charge wrongly or to abuse their discretion. This is the only case that they're pointing to, and in this case the facts are egregious. He's a 42-year-old man with a 13-year-old girl where there's a trusted relationship, and there's a number of facts that show that she was unable to give knowing consent. So, no, Your Honor, there's absolutely no case where this, there aren't like the 15 cases which show that this is what the prosecutors are doing. In fact, they've been exercising their discretion. Counsel? With regard to the appellate argument, the state conceded an oral argument that the claim that PV was unable to give knowing consent was based on two reasons, two facts. That she was 13 years old, and two, that 13-year-olds cannot consent to acts of sexual penetration. And it seems like you're adding now some more elements to that argument. So it, my point is, is this argument is not consistent with how the Illinois legislature has defined sex offenses in the criminal code. Well, Your Honor, first of all, we did not limit our argument to that below in our briefs, and at argument we talked about all of the factors, just as I've described here. We've talked about her emotional state, everything. We talked about all the factors, and we said based on the totality of the evidence, she was unable to understand the nature of the acts of giving knowing consent. And based on age, though, just because of the age element, as opposed to other, another mental deficiency being unable. Sure. It's the fact that she came in being a 13-year-old, that's her mental condition. Again, age comes with, I mean, this girl is 13, so with that common mental characteristic. But there are very sophisticated 13-year-old girls as well, so what is the unable to understand, besides age? She seemed to follow instructions with him. But following instructions does not mean that she knew what she was doing, and she was giving knowing consent. I mean, this is, it's like saying someone who is some mental deficiency, let's say a 34-year-old who acts like a 13-year-old and has the ability to consent, that's the mental deficiency. But that would be, under this particular section of the statute, something that would be very relevant. And the fact that she acts like a 13-year-old, and similarly this girl acted like a 13-year-old, she comes with a mental, every victim comes in with a mental state. And this girl came in with a mental state of an unsophisticated 13-year-old. She, although, if a mentally deficient person would comply with some acts and not comply with others and sort of say, okay, I can do that or I can do that, the important fact is that the person was mentally deficient and they were unable to do that. They were unable to give that consent. So age is irrelevant for your purposes, it's her mental state. Age is certainly relevant. But it's the fact that she's 13. Age alone is not, is just, under the plain language, age alone is sufficient. However, this Court doesn't need to go that far because age is at the very least a relevant factor for the jury to have considered and did consider. What's the significance, then, of the word knowing, knowing consent? There's, knowing consent under defendant's definition is a person's agreement with full knowledge of the risks and alternatives to the acts. And so in this case, the minor victim, the 13-year-old who demonstrated that she didn't understand the risks and alternatives. And defendant draws this distinction between the effective consent and the knowing consent. But first of all, this is a plain language argument, so you don't need to turn to history. But even if you do, he's not identified any situation in which there would actually be a distinction except for this one. And on top of that, his definition of effective, as defined in his brief, is someone who is carrying weight or exerting authority. But the question is why is the victim unable? It doesn't change that effective consent is the same thing as knowing consent. Because the question is whether a person is unable to give effective consent or unable to give knowing consent. Defendant's definition of effective doesn't include the word illegal anywhere. So under the prior statute, it would have been unable by reason legally or mentally to give effective consent. Similarly, under this statute, unable legally or mentally for whatever reason, unable to give knowing consent. There's no actual difference between them, especially when defendant defines it himself as saying that knowing consent means full awareness of the risks and alternatives. And it's well established that minors don't or are not aware of sexual, the whole purpose behind the age of consent is that. And the rationale supporting it is that, is that they are incapable of understanding the social and personal consequences of their actions. But even going back to that, his position, so defendant agrees that back before the change from effective to knowing, a minor would have fallen within the statute. So then the question is, well, did the legislature truly intend to give less protection to minors as time has gone on? Because that's what the result of his position is, and that seems contrary to the legislative purpose to protect minors. And finally, in his brief, as he cites the legislative history, this was a clean-up amendment. The legislature revamped the sexual assault statutes back in 1983, and this was a clean-up amendment. And it was within a short period of time of having revamped the statutes, they did this to clean it up. And it may have been because they included a section about... Excuse me, I wanted to ask you one question about the elevation of the penalty. There has to be a reason that the legislature intended that it be elevated. Could that be because it assumed that this section was for someone who was unable, meaning mental deficiency? Or, in some capacity, either drunk or mentally unable to? That that would be even a more grievous offense? Otherwise, it seems like the statute section A-2 would be superfluous. They could always charge a defendant under the other sections, as Justice Tyson said. But, Your Honor, there's a knowledge element, there's a mens rea element that elevates this statute, just like with any other... The defendant must know. In those other circumstances, for example, the defendant had pointed to the severely or profoundly mentally retarded person. So severely or profoundly mentally retarded is, you know, quote, means something. And under the statutory scheme, that's aggravated criminal sexual assault, a Class X felony. But what if the person's not severely or mentally... I mean, there are factors that will always elevate a crime. And in this case, it's the knowledge element that elevates the crime in all the factual circumstances. And so it's no different than any other statute where it's signed to a requirement would elevate the crime. So can I conclude, Your Honor? Please. Your Honor, thank you. In sum, the people's position is that age alone would be sufficient under the plain language of the statute to prove that Peavy was unable to give knowing consent. However, under the facts of this case, any rational trier effect could have determined, based on her age and all the factual circumstances, the defendant knew that she was unable to do so. Therefore, the people request that this Court affirm the appellate court's judgment. Thank you. Thank you, Ms. Gosher. Mr. Wilson, rebuttal, if any. Thank you. I just have a few quick points. Before we start, Mr. Counsel, you don't dispute, do you, that if this, since we can affirm on any basis, and I know it will involve combing of the record, but if what counsel says is true, that what came out in evidence in that case, separate and apart or in addition to the victim being 13 years of age, that if we find that the evidence is there that indicates that there was not knowing consent, that we could affirm on that basis, right? I would agree with that statement. I would clarify and say you would have to make a finding that, based on the evidence in the record, the defendant would have known that P.V. was unable to understand the nature of the acting of knowing consent. And I don't believe that evidence is there. P.V. and one thing that the counsel mentioned was that the defendant had said go in and change your clothes and that she was merely following his direction. During her trial testimony, P.V. said, then he told me I had too much clothes on, and so I went in the house and I changed. He never said go into the house and change. He made this statement and she made this decision that, okay, I'm going to go in the house and change. That's what I'm going to do. It was a conscious decision.  She was doing something in response to something else the defendant said to facilitate, and I don't want to sound like I'm blaming the victim. That's not what I'm doing at all. But certainly the record shows that the victim understood the nature of the act and gave knowing consent to those acts. And I don't believe that there's a showing in the record to demonstrate that Mr. Lloyd knew that the victim was unable to understand the nature or unable to give knowing consent. If your position is to get there, we would have to agree with the argument that being 13 is a factor. Correct, with the state's argument. And to that point, Justice Tice, when you were asking the state regarding the reasons for subsections 3 and 4 and 12-13, she mentioned that there was an additional element in this case, the knowledge element. And I just want to point out that subsection 3 talks about a family member committing the act, and subsection 4 talks about a person of trust, authority, or supervision in relation to the victim. Arguably somebody who holds those positions would know the age of the victim. It would be something that would just they would know as a result of their position being that close to a victim. So knowledge is kind of inherent in those subsections. I don't think that the difference between the inclusion of knowledge in subsection 2 and the language in 3 and 4, there's an inconsistency there, and I don't think the state adequately explains that away. Again, the reason why prosecutorial discretion should not be used to okay what occurred in this case is due to the rampant effect that that may have on this legislative scheme that the General Assembly has created. That scheme is fairly neat. It sets out specific age requirements for specific victims and specific acts, and allowing prosecutorial discretion to play into the equation to determine instead of what the legislature thinks is appropriate, I'm going to prosecute this as a class 1 rather than a misdemeanor. I think that's significant. And that would result in, as I said, outcomes that the legislature never intended, and had they intended those, they could change the statute, and they haven't done that. That's not true with other crimes? Schemes set up with respect to other crimes? Excuse me, I didn't hear the second part of that. I'm sorry. That isn't true of other crimes and subsets of other crimes? If there's a legislative scheme that could be asserted in those cases as well? I think that is true in some cases. I think what the issue is in this case is the severity of the distinction that would take place, where the prosecutor could charge two 16-year-olds that the legislature has clearly said should be charged as class A misdemeanors with a class 1 nonprobational felony. The penalty for that offense goes from up to a year in jail to up to 15 years in prison, with the sentences being mandatorily consecutive if there were multiple acts. And I can't conceive that the legislature would think that that was an appropriate outcome. You know, the legislature, they are the ones that make the laws based on their policy decisions, and they've constructed this scheme in order to have a comprehensive set of rules to cover these exact circumstances. The exact circumstance Mr. Lloyd should have been charged pursuant to in this case, 12-16D, and for whatever reason he just simply wasn't. So I don't believe that prosecutorial discretion can be used in this case, given the disparity that would take place. I just want to clarify, the state had, during its argument, said that I would agree that a minor would have fallen within the effective consent language of the previous version of the statute. I don't know whether it would have or it wouldn't have. What I said during my argument was that would be a much closer question than what we're presented with here. The state's argument would be much more plausible, because I could see it making a good argument that effective consent includes legal consent. But that's not the case that we have in front of us today. The statute specifically was changed to include a showing of knowing consent, not legal consent. The legislature could have done that. Not that knowing consent or prohibiting someone to have sex with someone who wasn't able to give knowing consent or someone who was a minor. We don't have that. There are statutes for those other provisions. And, again, the legislature's use of that statute shows that the state's position is not what the legislature intended. And the state talks about prosecutorial discretion and the fact that prosecutors aren't charging this and it's not an excessive use of this interpretation of the statute. What I would point out in this case is, again, to the prosecutorial discretion point, the prosecutor is not applying a statute that has been traditionally applied to this class of individual, to Mr. Lloyd. The state is asking essentially for there to be a change in the way that the statute has always been interpreted to include someone who is a minor. So that's why we haven't seen a lot of cases about this topic or on this topic. It's because the law doesn't hold the way that the state says it does. The statute has never been interpreted the way the state says it has. And that's why we don't see a large amount of cases where this offense has been charged. They simply don't exist because no prosecutor has went out on a limb to charge someone instead of the act that they should have charged him or her with with this subsection and then argued that the law should be changed to accommodate that. Again, all I'm arguing today is that the law should be viewed as it has always been, consistent with the structure that the legislature has set forth to cleanly give courts guidance on how individuals should be charged that commit sex offenses. There was a statute directly on point in this case. Instead of using that statute, the state is asking for a change in the law, a change in the way that the statute has been traditionally interpreted, and a change that can't be workable given the consequences that will follow. And the fact, the state argues that, you know, you can rely on the age or the age is a factor you can look at. Again, no matter what the condition is that someone walks into, with which someone walks into a courtroom, the operative question is, did that condition result in the victim's ability to consent? Is their ability to consent throttled? Again, that's Maloney and Blake. They talk about the throttling. In this case, there is no such showing, and certainly there is no showing that Mr. Lloyd believed that her ability was throttled. I would ask that Mr. Lloyd's conviction be vacated and that the appellate court's judgment should be reversed. Thank you, Your Honors. Thank you. Case number 113510, People v. Terry Lloyd, is taken under advisement as agenda number six. Mr. Wilson, Ms. Koshyp, thank you for your arguments today.